UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **FASTECH SERVICES, INC.,** | ) Case No. 10-81323 |
| a Nevada corporation, | ) |
| | ) Honorable Thomas L. Perkins |
| Debtor. | ) |

**DEBTOR'S MOTION FOR AN EXTENSION OF TIME WITHIN WHICH
THE DEBTOR RETAINS THE EXCLUSIVE RIGHT TO FILE
A PLAN OF REORGANIZATION AND OBTAIN ACCEPTANCE THEREOF**

NOW COMES FasTech Services, Inc. (the "Debtor"), by its undersigned counsel, and for its motion pursuant to §1121(d) of the Bankruptcy Code for an Extension of Time Within Which the Debtor Retains its Exclusive Right to File a Plan of Reorganization and Obtain Acceptance Thereof (the "Motion") states as follows:

## INTRODUCTION

1. On April 22, 2010 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has remained in possession of its property and has operated its business as a debtor in possession pursuant to §§1107 and 1108 of the Bankruptcy Code.

2. A committee to represent the interests of general unsecured creditors has been appointed in this case, but thus far the committee has not requested authority to engage professionals persons to represent its interests.

3. This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §1334. This proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

1

## BACKGROUND AND STATUS OF THE CHAPTER 11 CASE

4. During the past several years, Swank Enterprises, Inc. or one of its affiliates acquired several companies, including Alternatech, Inc., Art and Print, Inc., Associated Mechanical, Inc., R.J. Power Plumbing & Heating Company, and Twin City Controls. Art and Print, Inc. provided specialized printing services, and Alternatech, Inc. was an information technology provider to construction companies. The other companies provided construction and related services in the HVAC construction industry. All of these companies operate from leased facilities located in Washington, Illinois; East Peoria, Illinois; and Springfield, Illinois. In addition, two startup companies were formed to provide distribution and design services relating to the HVAC construction industry. These latter two businesses are located in Tennessee.

5. As this business enterprise expanded, it was determined that marketing efforts would be enhanced by conducting the businesses with one common trade name and that overhead expenses could be reduced by consolidating the businesses. Accordingly, the Debtor was incorporated in 2009, and a merger agreement was implemented pursuant to which all of these businesses were merged into the Debtor. The Debtor's sole shareholder is SARS Corporation, whose shares of common stock are publicly traded.

6. The Debtor has a relatively limited staff of hourly and salaried employees to manage its affairs, and the Debtor is a party to several collective bargaining agreements with area labor unions which provide workers in connection with the Debtor's performance of its work pursuant to construction contracts.

7. Since the Petition Date, the Debtor has complied with its duties and obligations under the Bankruptcy Code. Moreover, many significant events have occurred and

progress made relating to the rehabilitation of the Debtor's financial affairs, including, but not limited to, the following:

    a. The Debtor filed its schedules, statement of financial affairs and other required documents, and the Debtor's President and Chief Financial Officer were examined under oath by the Office of the United States Trustee and other creditors at a meeting under §341 of the Bankruptcy Code;

    b. The Debtor has filed and served its monthly operating reports for the periods commencing on the Petition Date through June 2010;

    c. The Debtor's motion for authority to use cash collateral was granted, and two interim orders and a final order were entered authorizing such use and granting protection to creditors holding an interest in such property;

    d. Pursuant to the cash collateral orders, the Debtor has furnished weekly financial reports to counsel for its two principal secured creditors, Associated Bank and South Side Bank, as well as counsel for the Office of the Unites States Trustee and the Internal Revenue Service;

    e. Pursuant to the cash collateral orders, the Debtor has worked steadily with general contractors to reconcile amounts due and owing to the Debtor and its suppliers, lower-tier subcontractors and the labor unions with which the Debtor conducts business to enable disbursements to be made in connection therewith, which effort has enabled the Debtor to collect accounts receivable, sustain its operations and respond to invitations to bid on planned printing and construction projects;

    f. The Debtor reached an accord with one of its principal secured creditors, South Side Bank, regarding monthly adequate protection payments to be made

during the administration of this case, obviating the need for a scheduled evidentiary hearing;

  g. The Debtor also has reached an accord with its largest secured creditor, Associated Bank, regarding the terms of a proposed interim order providing adequate protection, which, subject to approval by this Court, will obviate the need for a scheduled evidentiary hearing;

  h. The Debtor obtained approval of this Court to assume a collective bargaining agreement with Local 137 and a construction contract with Reliable Contracting Group, Inc.;

  i. The Debtor believes it has located a facility that is suitable for consolidating several of its business segments which, subject to approval of this Court, will enable the Debtor to substantially reduce its general overhead operating expenses;

  j. The Debtor has nearly completed its analysis of its extensive fleet of vehicles for the purpose of presenting one or more motions to this Court requesting authority to sell certain of those vehicles which are not necessary to an effective reorganization of the Debtor's affairs; and

  k. The Debtor has continued to implement one component of its business plan commenced several months prior to the Petition Date of reducing payroll expenses.

## CAUSE EXISTS FOR AN EXTENSION OF THE EXCLUSIVITY PERIODS

8. Sections 1121(b), (c) and (d)(1) provide as follows:

(b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.

(c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee may file a plan if and only if—

4

(1) a trustee has been appointed under this chapter;

(2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or

(3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.

(d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

9. The Debtor respectfully submits that cause exists for a first extension of the exclusivity periods for several reasons, including, but not necessarily limited to, the following:

a. The progress made by the Debtor to date, including the events described in paragraph 7 above;

b. This Motion is timely made;

c. The Debtor's financial affairs are complex and involve several business segments presently operating from numerous locations;

d. The Debtor's constructive negotiations to date with its two principal secured creditors, whose claims aggregate in excess of $4 million, regarding consensual adequate protection payments were an essential first step toward negotiating the treatment of such claims under a plan of reorganization;

e. The Debtor has had preliminary discussions with a third party regarding exit financing;

f. The Debtor's operations have begun to stabilize, thereby enabling management to commence preparing projections predicated upon more concrete

information for the purpose of formulating fair and equitable treatment of all claims against its estate;

g. The bar date will expire in the next few days, whereupon the Debtor will be able to complete its analysis of all proofs of claim filed;

h. At all times the Debtor has dealt with all creditors and parties in interest in good faith; and

i. Granting the relief requested will not prejudice any creditor or other party in interest under the circumstances presented.

WHEREFORE, the Debtor respectfully requests (a) that its exclusive right to propose a plan of reorganization be extended to and including October 22, 2010, (b) that the period within which it can obtain acceptance thereof be extended to and including December 22, 2010, and (c) that it be granted such further and additional relief as may be equitable and just.

Dated: August 20, 2010                    Respectfully submitted,

                                          FASTECH SERVICES, INC.

                                          By: /s/ Charles S. Stahl, Jr.
                                              One of its attorneys

Charles S. Stahl, Jr. (Attorney I.D. No. 02699915)
Ross W. Bartolotta (Attorney I.D. No. 6224433)
Swanson, Martin & Bell, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6990
Fax: (630) 799-6901