UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| **FASTECH SERVICES, INC.,** | ) Case No. 10-81323 |
| a Nevada corporation, | ) |
| | ) Honorable Thomas L. Perkins |
| Debtor. | ) |

## DEBTOR'S PLAN OF REORGANIZATION

FasTech Services, Inc., a Nevada corporation (the "Debtor"), hereby proposes this Plan of Reorganization (the "Plan") for the purposes of continuing its business without interruption and as a going concern under its current management, and of providing fair and equitable treatment of the Claims of all of the Debtor's Creditors.

## INTRODUCTION

On April 22, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 11 of the United States Bankruptcy Code, Title 11, United States Code, §§1 *et seq.* (the "Bankruptcy Code"). Since the Petition Date, the Debtor has remained in possession of its property and has conducted its financial affairs as a debtor in possession pursuant to §§1107 and 1108 of the Bankruptcy Code. For the purpose of the Plan, the Debtor will be referred to as "FasTech" for the period prior to the Petition Date.

As more fully discussed in the Disclosure Statement dated as of January 31, 2011, accompanying this Plan, the funds and property required to effectuate the Plan shall be realized from (a) the Post-Confirmation Credit Facility, (b) Accounts Receivable Recoveries, (c) Avoidance Recoveries, (d) a contemplated capital contribution that might be paid by Shareholder after the Effective Date, and (e) funds generated by the Reorganized Debtor in the operation of its business.

As discussed below, under the Plan Claims and Interests are classified in 10 separate classes. The Claims classified under Classes 4, 5, 7, 8 and 9 are impaired. Accordingly, each holder of a Claim that is classified under any of those Classes is entitled to vote on the Plan. A Ballot for voting purposes accompanies the Plan. Unclassified Claims and Claims classified under Classes 1, 2, 3, and 6 in the Plan are not impaired, and the holders thereof are deemed to have accepted the Plan. Consequently, the holders of Claims that are not impaired under the Plan are not entitled to vote on the Plan. The Interests of the Debtor's sole shareholder, SARS, is classified under Class 10 in the Plan. Class 10 Interests are not impaired under the Plan.

# ARTICLE I

## DEFINITIONS AND CONSTRUCTION

1.1 "Accounts Receivable Recoveries" shall mean all funds collected by the Reorganized Debtor on account of accounts receivable of FasTech which existed on the Petition Date and remain uncollected as of the Confirmation Date, less all fees, costs and expenses, including attorneys' fees, incurred by the Reorganized Debtor for compensation of professionals employed by the Reorganized Debtor relating to Accounts Receivable Recoveries.

1.2 "Administrative Claim" shall mean, except as provided below, any cost, Claim or expense of the administration of this chapter 11 case allowed and entitled to priority in accordance with the provisions of §§503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's estate and all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under §§330 or 503 of the Bankruptcy Code against the Debtor's estate or under Chapter 123 of Title 28, United States Code; provided, however, Administrative Claim shall not include any Claims classified under Class 6 in the Plan.

1.3 "Allowed Claim" shall mean any Claim against the Debtor, provided: (a) a proof of claim was timely and properly filed before the Bar Date, pursuant to order of the Bankruptcy Court, or in accordance with the provisions contained in the Plan, or, if no proof of claim was filed, which has been or hereafter is listed by the Debtor in the Debtor's schedules or amended schedules as liquidated in amount and neither disputed nor contingent; and (b) in either such case, a Claim as to which no objection to the allowance thereof has been interposed on or before the applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of a claimant. Unless otherwise specified herein or by order of the Bankruptcy Court, Allowed Claims shall not include interest on such Claims for the period from and after the Petition Date, nor shall Allowed Claims include any Claim that may be disallowed under §502(d) of the Bankruptcy Code.

1.4 "Avoidance Recoveries" shall mean property or the value of such property recovered by and on behalf of the Debtor's bankruptcy estate pursuant to §550 of the Bankruptcy Code, less all fees, costs and expenses, including attorneys' fees, incurred by or on behalf of the Reorganized Debtor for compensation of Professional Persons relating to Avoidance Recoveries, but excluding the Thomas Power Avoidance Recovery."

1.5 "Bankruptcy Code" shall mean Title 11 of the United States Code, as in force and effect on April 22, 2010, and any and all amendments thereto through the Confirmation Date.

1.6 "Bankruptcy Court" shall mean the United States Bankruptcy Court for the

Central District of Illinois, including the United States Bankruptcy Judge presiding in this case, or such other court as may have jurisdiction over chapter 11 cases.

1.7 "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, the Rules of the United States District Court for the Central District of Illinois, the Rules of the United States Bankruptcy Court for the Central District of Illinois, and any other rules incorporated by reference by such rules, as the same may be amended from time to time, and as are applicable to cases pending before the Bankruptcy Court.

1.8 "Bar Date" shall mean (a) August 22, 2010 as to Pre-Petition Claims that are not held by governmental units, and (b) October 19, 2010 as to Pre-Petition Claims that are held by governmental units.

1.9 "Business Day" shall mean any day on which federal and state chartered banks are open generally to the public to conduct ordinary commercial banking business in Peoria, Illinois.

1.10 "Cash" shall mean cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks, commercial paper of any entity, including interest earned or accrued thereon.

1.11 "Claim" shall mean any right to payment or equitable remedy arising under or encompassed in §101(5) of the Bankruptcy Code, including, without limitation, any right to payment from the Debtor or debtor in possession that arose on or before the Confirmation Date, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.12 "Class 4 Collateral Value" shall mean the fair market value as of the Petition Date of all property of FasTech as to which the holder of the Class 4 Claims held a first priority, valid, perfected and enforceable security interest as of the Petition Date, but excluding accounts receivable and any other personal property no longer in the possession of the Debtor as of the Confirmation Date.

1.13 "Confirmation Date" shall mean the date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order or consummation of the Plan is stayed on motion pending appeal, then the Confirmation Date shall be the date of entry of a Final Order vacating such stay provided that the Confirmation Order is in full force and effect on such date.

1.14 "Confirmation Order" shall mean the order entered by the Bankruptcy Court

confirming the Plan and approving the transactions contemplated therein.

    1.15 "Contested Claim" shall mean a Claim as to which an objection in writing has been timely filed in accordance with the Bankruptcy Rules, any order of the Bankruptcy Court, or the provisions contained in the Plan, and until such time as a Final Order is entered by the Bankruptcy Court resolving or determining such objection.

    1.16 "Convenience Claim" shall mean an Unsecured Claim in an amount of $10,000.00 or less, or any other Unsecured Claim as to which the holder thereof voluntarily reduces such Unsecured Claim to $10,000.00 in accordance with the instructions and procedures accompanying the Plan and the Disclosure Statement. **THE HOLDERS OF UNSECURED CLAIMS WHO ELECT TO VOLUNTARILY REDUCE THEIR CLAIMS TO $10,000.00 MUST SO INDICATE THEIR ELECTION ON THE BALLOT THAT ACCOMPANIES THIS PLAN.**

    1.17 "Creditor" shall mean a person, partnership, corporation or entity that is the holder of a Claim against the Debtor that arose on or before the Petition Date, or a Claim against the Debtor's estate of any kind specified in §§502(g), 502(h) or 502(i) of the Bankruptcy Code.

    1.18 "Debtor" shall mean FasTech Services, Inc., a Nevada corporation, the Debtor and debtor in possession in the above-captioned chapter 11 case.

    1.19 "Disbursement Agent" shall mean the Reorganized Debtor, or such person or entity, including any replacement thereof or successor thereto, as may be designated by the Reorganized Debtor, and approved by the Bankruptcy Court if and as necessary or appropriate, to receive as custodian and to distribute the funds to the holders of Allowed Claims pursuant to the Plan.

    1.20 "Disclosure Statement" shall mean that certain disclosure statement approved by the Bankruptcy Court and accompanying the Plan.

    1.21 "Effective Date" shall mean the first Business Day occurring on or after the thirtieth (30th) day after the Confirmation Date.

    1.22 "Final Distribution" shall have the meaning ascribed to it in Article XV, paragraph 15.2 of the Plan.

    1.23 "Final Order" shall mean an order or a judgment of a court which (a) has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek review or rehearing has expired and as to which any right to appeal, reargue, petition for certiorari or rehearing has been waived in a manner satisfactory to the Debtor, as a result of which such order shall have become final and enforceable in accordance with applicable law; or (b) if an appeal, reargument, certiorari or rehearing thereof has been sought, the order of the lower court has been affirmed by the higher court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari

has been denied and time to take further appeal or to seek certiorari or further reargument or rehearing has expired.

1.24 "Financing Orders" shall mean those certain Final Orders entered by the Bankruptcy Court on June 1, 2010 and July 8, 2010, and any other Final Orders entered by the Bankruptcy Court prior to the Confirmation Date, authorizing the Debtor to use cash collateral pursuant to §363 of the Bankruptcy Code, or to obtain credit pursuant to §364 of the Bankruptcy Code.

1.25 "Interest" shall mean equity security in the Debtor pursuant to §101(16) of the Bankruptcy Code.

1.26 "Mechanics Liens" shall mean any mechanics lien under applicable Illinois law that the holder thereof has not released and as to which the holder asserts the mechanics lien secures any Allowed Claim of such Creditor in whole or in part and which attaches to (a) property in which the estate has an interest, but only to the extent of the value of such Creditor's interest in the estate's interest in such property, or (b) real estate and improvements as to which FasTech or the Debtor furnished labor or materials, or both; provided that neither the Bankruptcy Court, nor any other court of competent jurisdiction, has entered a Final Order ruling that any such asserted mechanics lien is void, invalid, unperfected or unenforceable; and provided further that nothing contained in the Plan or in the Confirmation Order shall be deemed or interpreted to waive, release or otherwise adversely affect the rights, claims, demands or defenses of the Debtor, the Reorganized Debtor or any third party relating to any such asserted mechanics lien.

1.27 "Petition Date" shall mean April 22, 2010, the date on which FasTech filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.28 "Plan" shall mean this Plan of Reorganization proposed by the Debtor, as may be amended and/or modified from time to time in accordance with the Bankruptcy Code and the Bankruptcy Rules.

1.29 "Post-Confirmation Credit Facility" shall mean any credit facility procured and entered by the Reorganized Debtor on or after the Confirmation Date, and, if necessary or required, as approved by the Bankruptcy Court after notice and a hearing.

1.30 "Pre-Petition Claims" shall mean all Claims for debts, liabilities, demands or Claims of any character arising prior to the Petition Date.

1.31 "Priority Claim" shall mean any Allowed Claim which is an Unsecured Claim entitled to priority in payment under §§507(a)(2) to (9), inclusive, of the Bankruptcy Code, but excluding Tax Claims and any portion of the Claims classified under Class 6 in the Plan.

1.32 "Professional Persons" shall mean persons, including attorneys, accountants, auctioneers and financial advisors, employed by the Debtor pursuant to Final Order

entered by the Bankruptcy Court, or to be compensated pursuant to §§326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

1.33 "Pro Rata" shall mean the proportion that the amount of a Claim in a particular class bears to the aggregate amount of all Claims which are entitled to a particular distribution (including Contested Claims until disallowed by Final Order) in such class.

1.34 "SARS" and "Shareholder" shall mean SARS Corporation, a Nevada corporation, which is the sole shareholder of the Debtor and whose shares of common stock are publicly-traded over the counter under the symbol SARO.

1.35 "Secured Claim" shall mean an Allowed Claim that is secured by a lien or security interest on property in which the estate of the Debtor has an interest, or that is subject to set-off under §553 of the Bankruptcy Code, to the extent of the value of such Creditor's interest in the estate's interest in such property, or to the extent of the amount subject to set-off.

1.36 "Tax Claim" shall mean any Allowed Claim of a governmental unit that arose prior to the Petition Date and that is entitled to priority under §507(a)(8) of the Bankruptcy Code, but excluding ad valorem Claims or other tax Claims of governmental units, if any, if those Claims under applicable law are secured by a lien on real or personal property of the Debtor's estate.

1.37 "Thomas Power Avoidance Recovery" shall mean property or the value of property recovered by and on behalf of the Debtor's bankruptcy estate pursuant to §550 of the Bankruptcy Code from Thomas Power, less all fees, costs and expenses, including attorneys' fees, incurred by or on behalf of the Debtor and the Reorganized Debtor for compensation of Professional Persons relating to the Thomas Power Avoidance Recovery.

1.38 "Ultimately Allowed Claim" shall mean any Contested Claim to the extent that it becomes an Allowed Claim in whole or in part.

1.39 "Unclaimed Distributions" shall have the meaning ascribed to it in Article XV, paragraph 15.1 of the Plan.

1.40 "Union Claims" shall mean all Allowed Pre-Petition Claims and Administrative Claims arising under collective bargaining agreements by and among FasTech and the following labor unions, including the Allowed Claims of all benefit funds of each of said labor unions:

    a. Carpenters Local 347,
    b. Central Laborers Union,
    c. East Central Illinois Pipe Trades,
    d. Plumbers Local 63,

  e. Plumbers & Pipefitters Local 99,
  f. Plumbers & Pipefitters Local 137,
  g. Sheet Metal Workers Local 36,
  h. Sheet Metal Workers Local 218, and
  i. Steamfitters Local 353.

 1.41 "Unsecured Claim" shall mean any Allowed Claim that is not an Administrative Claim, Secured Claim, Priority Claim, Tax Claim, Union Claim or Convenience Claim.

 1.42 Unless otherwise stated, all other terms if defined by the Bankruptcy Code, the Bankruptcy Rules, or applicable judicial decisions shall have such defined meanings.

 1.43 The words "herein," "hereof" and "hereunder," and other words of similar import, refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan.

 1.44 All definitions as may be applicable to the Plan shall be equally applicable to the singular and plural forms of the terms defined.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

 2.1 "Unclassified Claims" shall mean Administrative Claims.

 2.2 "Class 1 Claims" shall mean Priority Claims.

 2.3 "Class 2 Claims" shall mean Tax Claims.

 2.4 "Class 3 Claims" shall mean the Secured Claims of Morton Community Bank, as successor by merger with Citizens State Bank of Cropsey.

 2.5 "Class 4 Claims" shall mean the Secured Claims of Associated Bank.

 2.6 "Class 5 Claims" shall mean the Secured Claims of South Side Bank.

 2.7 "Class 6 Claims" shall mean Union Claims.

 2.8 "Class 7 Claims" shall mean Convenience Claims.

 2.9 "Class 8 Claims" shall mean Mechanics Liens.

 2.10 "Class 9 Claims" shall mean all Unsecured Claims.

 2.11 "Class 10 Interests" shall mean the Interests of all holders of equity security

in the Debtor of whatever character, description, nature or liquidation preference.

Unclassified Claims and Claims classified under Classes 1, 2, 3, and 6 in the Plan and Interests classified under Class 10 in the Plan are not impaired under the Plan. All other Claims are impaired by the Plan.

## ARTICLE III

## TREATMENT OF UNCLASSIFIED CLAIMS (ADMINISTRATIVE CLAIMS)

3.1 Each Unclassified Claim, including the Administrative Claims of all taxing bodies, shall be paid in full by the Reorganized Debtor upon the entry of a Final Order of the Bankruptcy Court allowing and authorizing the payment of such Unclassified Claim (if an order allowing and authorizing payment of such Unclassified Claim is either sought or required by either the Bankruptcy Code or the Bankruptcy Rules, or both), or on the Effective Date, whichever is later, unless the holder of an Unclassified Claim agrees to different treatment of its Claim, in which event the provisions of the agreement between the Reorganized Debtor and the claimant with respect to payment of the Unclassified Claim shall govern and shall be incorporated herein by reference.

3.2 Notwithstanding anything contained in paragraph 3.1 to the contrary, each Unclassified Claim that is a trade account payable and that arose in the ordinary course of business of the Debtor as debtor in possession shall be paid in the ordinary course of business of the Reorganized Debtor upon the same terms and conditions as agreed by the Debtor and such holder of an Unclassified Claim.

3.3 All fees payable under Title 28, United States Code §1930, shall be paid in full by the Debtor on or before the Confirmation Date.

## ARTICLE IV

## TREATMENT OF CLASS 1 CLAIMS (PRIORITY CLAIMS)

4.1 The holder of each Class 1 Claim shall be paid the full amount thereof in Cash by the Reorganized Debtor upon the entry of a Final Order of the Bankruptcy Court allowing and authorizing the payment of such Class 1 Claim (if an order allowing and authorizing payment of such Class 1 Claim is either sought or required by either the Bankruptcy Code or the Bankruptcy Rules, or both), or on the Effective Date, whichever is later.

## ARTICLE V

## TREATMENT OF CLASS 2 CLAIMS
## (TAX CLAIMS)

5.1 The holder of each Class 2 Claim shall be paid on account thereof regular installment payments in Cash of a total value, as of the Effective Date, equal to the allowed amount of such Claim, over a period ending not later than five (5) years after the Petition Date, and in a manner not less favorable than the treatment of Class 9 Claims.

5.2 The first installment payment on account of each Class 2 Claim shall be made thirty (30) days after the Effective Date, and successive installment payments shall be made every thirty (30) days thereafter. Interest shall accrue from the Effective Date and be paid on the unpaid balance of each Class 2 Claim at the rate imposed in respect to such Tax Claim under applicable law, if any, until such time as each such Class 2 Claim is paid in full.

5.3 The Reorganized Debtor reserves the right to prepay in whole or in part any Class 2 Claim without further interest or penalty.

## ARTICLE VI

## TREATMENT OF CLASS 3 CLAIMS
## (SECURED CLAIMS OF MORTON COMMUNITY BANK)

6.1 On and after the Confirmation Date, the holder of the Class 3 Claims shall retain its liens and security interests in and to certain personal property of FasTech in the same manner and in the same order of priority which existed as of the Petition Date to secure payment in full of the Class 3 Claims.

6.2 The holder of the Class 3 Claims shall be paid monthly payments of principal and interest in the same amounts as provided in and in accordance with the loan documents evidencing the Class 3 Claims.

6.3 The Reorganized Debtor reserves the right to prepay in whole or in part the Class 3 Claims without further interest or penalty.

6.4 At such time as the Class 3 Claims are paid in full, the holder of the Class 3 Claims shall execute and deliver to the Reorganized Debtor any and all documents as may be requested, necessary or required to cancel, terminate, expunge and release all liens and security interests held by the holder of the Class 3 Claims in and to property of the Debtor and of the Reorganized Debtor.

## ARTICLE VII

### TREATMENT OF CLASS 4 CLAIMS
### (SECURED CLAIMS OF ASSOCIATED BANK)

7.1 On and after the Confirmation Date, the holder of the Class 4 Claims shall retain its liens and security interests in and to certain personal property of FasTech in the same manner and in the same order of priority which existed as of the Petition Date to secure payment of the Class 4 Claims.

7.2 The holder of the Class 4 Claims shall be paid eighty-five percent (85%) of Accounts Receivable Recoveries that relate to accounts receivable of FasTech as to which the holder of the Class 4 Claims held a first priority, valid, perfected and enforceable security interest on the Petition Date. The Reorganized Debtor will not compromise the amount to be collected on account of any such account receivable without the prior written consent of the holder of the Class 4 Claims.

7.3 On or before the Confirmation Date, the Debtor and the holder of the Class 4 Claims will exercise their best efforts to stipulate and agree upon the Class 4 Collateral Value. If the Debtor and the holder of the Class 4 Claims are unable to agree upon the Class 4 Collateral Value, then the Bankruptcy Court will be requested to determine the Class 4 Collateral Value as its schedule permits.

7.4 Subject to the prepayment obligation set forth in paragraph 7.5 below, commencing thirty (30) days after the Class 4 Collateral Value is determined by agreement of the parties or the entry of a Final Order by the Bankruptcy Court determining the same, and continuing for a period of fifty-nine (59) months thereafter, the Reorganized Debtor shall make monthly payments to the holder of the Class 4 Claims in an amount equal to 1/60 of the sum of the Class 4 Collateral Value plus the amount by which the accounts receivable of FasTech as to which the holder of the Class 4 Claims held a first priority, valid, perfected and enforceable security interest on the Petition Date diminished in value as of the Confirmation Date. Interest shall accrue and be due and owing on the debt to be paid pursuant to this paragraph 7.4 at the rate of four percent (4%) per annum.

7.5 The Reorganized Debtor shall remit to the holder of the Class 4 Claims for application to the Reorganized Debtor's obligations set forth in paragraph 7.4 above twenty-five percent (25%) of the Thomas Power Avoidance Recovery, if any.

7.6 The Reorganized Debtor reserves the right to prepay in whole or in part its obligations set forth in paragraph 7.4 above without further penalty or interest.

7.7 If and to the extent the Class 4 Claims are not paid in full pursuant to this Article VII, then any remaining unpaid balance thereof shall be treated under Class 9 in the Plan.

## ARTICLE VIII

### TREATMENT OF CLASS 5 CLAIMS
### (SECURED CLAIMS OF SOUTH SIDE BANK)

8.1 On and after the Confirmation Date, the holder of the Class 5 Claims shall retain its liens and security interests in and to certain personal property of FasTech in the same manner and in the same order of priority which existed as of the Petition Date to secure payment of the Class 5 Claims.

8.2 The holder of the Class 5 Claims shall be paid eighty-five percent (85%) of Accounts Receivable Recoveries that relate to accounts receivable of FasTech as to which the holder of the Class 5 Claims held a first priority, valid, perfected and enforceable security interest on the Petition Date. The Reorganized Debtor will not compromise the amount to be collected on account of any such account receivable without the prior written consent of the holder of the Class 5 Claims.

8.3 Commencing on the Effective Date, and continuing for a period of fifty-nine (59) months thereafter, the Reorganized Debtor shall make monthly payments to the holder of the Class 5 Claims in an amount equal to 1/60 of the amount by which the accounts receivable of FasTech as to which the holder of the Class 5 Claims held a first priority, valid, perfected and enforceable security interest on the Petition Date diminished in value as of the Confirmation Date. Interest shall accrue and be due and owing on the debt to be paid pursuant to this paragraph 8.3 at the rate of four percent (4%) per annum.

8.4 The Reorganized Debtor reserves the right to prepay in whole or in part its obligations set forth in paragraph 8.3 above without further penalty or interest.

8.5 If and to the extent the Class 5 Claims are not paid in full pursuant to this Article VIII, then any remaining unpaid balance thereof shall be treated under Class 9 in the Plan.

## ARTICLE IX

### TREATMENT OF CLASS 6 CLAIMS
### (UNION CLAIMS)

9.1 Union Claims shall be paid in full and in Cash on the Effective Date.

## ARTICLE X

### TREATMENT OF CLASS 7 CLAIMS
### (CONVENIENCE CLAIMS)

10.1 In full and final satisfaction of Class 7 Claims, the holder of each Class 7

Claim shall be paid fifteen percent (15%) of the amount thereof in Cash and without interest through one lump sum payment to be made one hundred eighty (180) days after the Effective Date.

## ARTICLE XI

### TREATMENT OF CLASS 8 CLAIMS
### (MECHANICS LIENS)

11.1  Except as provided in paragraph 11.2 below, Mechanics Liens shall remain unaltered and are not impaired by the Plan.  On and after the Confirmation Date, any Mechanics Lien shall continue in full force and effect against property of the estate or otherwise, subject to any and all rights, claims, demands and defenses which the Debtor, the Reorganized Debtor or any third party may have with respect thereto.

11.2  Notwithstanding anything to the contrary contained in paragraph 11.1 above, any holder of a Mechanics Lien shall be barred from seeking to enforce its Mechanics Lien in a court of competent jurisdiction if (a) the Claim of a holder of a Mechanics Lien is disallowed by Final Order entered by the Bankruptcy Court, or (b) the Mechanics Lien is determined to be void or voidable by a Final Order entered by the Bankruptcy Court.

11.3  No distribution of Cash will be made under the Plan on account of Class 8 Claims.  The Allowed Claim of each holder of a Mechanics Lien shall be treated and receive distributions as an Unsecured Claim under Class 9 in the Plan; provided, however, the amount of such Unsecured Claim shall be reduced by the amount of any payments the holder thereof receives from any third party on account of its Mechanics Lien.

## ARTICLE XII

### TREATMENT OF CLASS 9 CLAIMS
### (UNSECURED CLAIMS INCLUDING CLASS 8 CLAIMS)

12.1  In full and final satisfaction of Class 9 Claims, the holder of each Class 9 Claim shall be paid in Cash through six (6) installment payments its Pro Rata share of the greater of (a) Avoidance Recoveries and (b) $300,000.00.  The first installment payment on account of each Class 9 Claim shall be made one hundred eighty (180) days after the Effective Date, and successive installment payments shall be made every one hundred eighty (180) days thereafter.

12.2  The first five installment payments pursuant to paragraph 12.1 above shall each be in the aggregate sum of $50,000.00, and the sixth installment payment shall be in an aggregate sum equal to the greater of (a) $50,000.00 and (b) the total amount of Avoidance Recoveries less $250,000.00.

12.3  Notwithstanding anything contained in this Article XII to the contrary, as soon as all Avoidance Recoveries are collected, and if the total amount of Avoidance Recoveries equals or exceeds the sum of $300,000.00, then a final distribution to the holders of Class 9 Claims shall be made at that time in an aggregate sum equal to the total amount of Avoidance Recoveries less the aggregate sum of installment payments previously made to the holders of Class 9 Claims.

## ARTICLE XIII

### TREATMENT OF CLASS 10 INTERESTS (SHAREHOLDER INTERESTS)

13.1  All Class 10 Interests shall remain unaltered and are not impaired by the Plan.

## ARTICLE XIV

### MEANS FOR EXECUTION OF THE PLAN

14.1  **THE HOLDERS OF UNSECURED CLAIMS WHO ELECT TO VOLUNTARILY REDUCE THEIR CLAIMS TO $10,000.00 AND TO BE TREATED UNDER CLASS 7 IN THE PLAN MUST SO INDICATE THEIR ELECTION ON THE BALLOT THAT ACCOMPANIES THIS PLAN.**

14.2  After the Effective Date, Shareholder shall exercise its best efforts to remit to the Reorganized Debtor a capital investment in the Reorganized Debtor. If and to the extent a capital investment is made by Shareholder, then the Reorganized Debtor shall utilize such funds as additional working capital and, if possible, to accelerate payments to Creditors under the Plan.

14.3  The funds required to implement the Plan shall be derived from (a) Accounts Receivable Recoveries, if any, (b) Avoidance Recoveries, if any, (c) borrowings under the Post-Confirmation Credit Facility, and (d) funds generated by the Reorganized Debtor in the operation of its business.

14.4  Except as otherwise provided in the Plan, the Disbursement Agent shall make all payments required to be made under the Plan to and for the benefit of all Creditors whose Claims are treated under the Plan.

14.5  Any and all compromises of claims relating to Avoidance Recoveries shall be subject to the entry of a Final Order of the Bankruptcy Court, after notice and a hearing.

14.6  Confirmation of the Plan shall not be subject to the liquidation of any of the property of the Reorganized Debtor, nor is the need for further financial reorganization of the Reorganized Debtor contemplated by the Plan; provided, however, the Reorganized

Debtor reserves the right to sell, transfer, trade or otherwise dispose of any its property as it deems appropriate.

14.7  No governmental regulatory commission has jurisdiction over the rates of the Debtor, and therefore no approval of any such commission is necessary or required.

14.8  The Debtor does not maintain any retirement benefit plans, and therefore the Plan need not provide for the continuation of any such plans pursuant to §§1114 and 1129(a)(13) of the Bankruptcy Code.

14.9  On the Effective Date, the Reorganized Debtor shall implement such amendments and revisions, if any may be needed, to its articles of incorporation and by-laws to effectuate the transactions contemplated by the Plan.

14.10  The Debtor reserves the right, pursuant to §1129(b) of the Bankruptcy Code, to request the Bankruptcy Court to confirm the Plan if all applicable requirements of §1129(a) of the Bankruptcy Code other than §1129(a)(8) are met.

14.11  The Debtor and the Reorganized Debtor shall prosecute all objections to Claims, without prejudice to any other Creditor asserting an objection to a Claim.

14.12  The Debtor, the Reorganized Debtor and the Disbursement Agent, and their respective Professional Persons, directors, officers, employees and agents, shall exercise ordinary care in the discharge of their respective duties under the Plan. After the Confirmation Date, all such entities and persons shall not be subject to any cause of action by any party or Creditor for any act which they took in the reasonable exercise of their business judgment or that was approved by the Bankruptcy Court.

14.13  All reasonable fees and expenses earned and incurred by the Disbursement Agent, if any, shall be paid by the Reorganized Debtor.

## ARTICLE XV

## DISTRIBUTIONS TO CREDITORS

15.1  "Unclaimed Distributions" shall mean any distribution of Cash to which a Creditor is entitled and which such Creditor has not claimed on or before six (6) months following the date on which such distribution is returned as undeliverable, and all interest thereon, shall be promptly delivered to the Disbursement Agent, to be held in a special account subject to the Final Distribution provisions set forth below. At the end of said period set forth for Final Distribution, the holders of Allowed Claims theretofore entitled to distributions which remain unclaimed shall cease to be entitled thereto, and the unclaimed distributions, plus all interest earned thereon, shall become the sole and exclusive property of the Reorganized Debtor.

15.2  "Final Distribution" shall constitute the last payment to Creditors under the

Plan. On the date on which all Claims in each class of Claims are allowed or otherwise resolved pursuant to Final Order, the Disbursement Agent shall make a final recalculation of the distributions to the holders of Class 9 Claims, taking into account the resolution of Contested Claims and Ultimately Allowed Claims, and distributions made and permitted under the Plan. Upon completion of such final recalculations, the Disbursement Agent shall make any additional payments as may be required pursuant to Final Order to a holder of a Class 9 Claim and shall distribute Pro Rata to the holders of Class 9 Claims all reserved funds, inclusive of interest earned thereon, if any, not previously used to pay Claims.

## ARTICLE XVI

## REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

16.1 In addition to any and all other executory contracts and unexpired leases heretofore assumed by the Debtor pursuant to §365 of the Bankruptcy Code, the Debtor hereby elects to assume the following executory contracts:

| COUNTERPARTY UNDER EXECUTORY CONTRACT | NATURE OF EXECUTORY CONTRACT |
|---|---|
| Carpenters Local 347 | Collective bargaining agreement |
| Central Laborers Union | Collective bargaining agreement |
| East Central Illinois Pipe Trades | Collective bargaining agreement |
| Plumbers Local 63 | Collective bargaining agreement |
| Plumbers & Pipefitters Local 99 | Collective bargaining agreement |
| Plumbers & Pipefitters Local 137 | Collective bargaining agreement |
| Sheet Metal Workers Local 36 | Collective bargaining agreement |
| Sheet Metal Workers Local 218 | Collective bargaining agreement |
| Steamfitters Local 353 | Collective bargaining agreement |

16.2 All defaults existing as of the Effective Date arising under the executory contracts enumerated in paragraph 16.1 above shall be paid in full and in Cash on the Effective Date.

16.3 All executory contracts and unexpired leases of FasTech entered into prior to the Petition Date and that are not assumed or rejected or deemed rejected by the Debtor pursuant to §365 of the Bankruptcy Code prior to the Confirmation Date, or assumed by the Debtor pursuant to paragraph 16.1 above and the Confirmation Order, shall be deemed rejected on the Confirmation Date.

16.4 Each non-debtor party to an executory contract or an unexpired lease rejected hereunder shall have thirty (30) days from the Confirmation Date to file a proof of claim with the Bankruptcy Court asserting damages arising from such rejection, or be forever barred from asserting any such Claim. Contemporaneous with the filing of such proof of claim, said non-debtor party shall serve a copy of the proof of claim upon the

parties specified and in accordance with the terms contained in Article XX, paragraph 20.2 below.

## ARTICLE XVII

## MODIFICATION OF THE PLAN

17.1 Without order of the Bankruptcy Court and at any time before the Confirmation Date, the Debtor may amend or modify this Plan, provided that such Plan, as amended or modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with §1125 of the Bankruptcy Code.

17.2 The Plan may be modified at any time after confirmation and before its substantial consummation, provided such Plan, as modified, meets the requirements of §§1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms such Plan, as modified, under §1129 of the Bankruptcy Code, and the circumstances warrant such modification.

17.3 A holder of a Claim or Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time specified by the Bankruptcy Court, such holder changes its previous acceptance or rejection.

## ARTICLE XIII

## PROCEDURES FOR RESOLVING CONTESTED CLAIMS

18.1 To the extent that an objection relates only to a portion of a Claim, the remainder of such Claim shall be deemed an Allowed Claim, and only that portion of the Claim as to which an objection has been filed shall be deemed a Contested Claim.

18.2 At the time of any distributions to Creditors provided for under the Plan, the Disbursement Agent shall reserve the amount of Cash as it deems necessary and appropriate to account for all Contested Claims that are either Class 7 Claims, Class 8 Claims or Class 9 Claims. The Disbursement Agent shall hold funds so reserved pursuant to this subparagraph and not distribute such funds to other Creditors. Upon any such Contested Claim becoming an Ultimately Allowed Claim, the amount of Cash then due to the holder of such Ultimately Allowed Claim shall be distributed to such Creditor without interest. Such distributions to each holder of a Contested Claim that becomes an Ultimately Allowed Claim shall be made in accordance with the provisions of the Plan with respect to the class of Claims to which the respective holder of such Ultimately Allowed Claim belongs. The distributions to holders of such Ultimately Allowed Claims shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order. Unless and until a Contested Claim becomes an Ultimately Allowed Claim, no holder of a Contested Claim shall have any Claim against the Cash reserved on account of such Contested Claim.

## ARTICLE XIX

## CORPORATE GOVERNANCE OF THE REORGANIZED DEBTOR

19.1 On and after the Confirmation Date, and subject to the by-laws of the Reorganized Debtor, the Board of Directors of the Reorganized Debtor shall be comprised of Frank Bonadio and Todd Robnson, who shall serve as directors of the Reorganized Debtor without compensation until such time as all distributions in Cash required under the Plan, if any, to the holders of Class 9 Claims have been made.

19.2 On the Confirmation Date, all of the executive officers of the Debtor shall be retained by the Reorganized Debtor; namely, Frank Bonadio, as Chief Executive Officer and President; Clayton Shelver, as Chief Financial Officer; and Todd Robinson, as Vice-President. For the first calendar year following the Confirmation Date, the annual salaries of the foregoing officers shall be the following:

| | |
|---|---|
| Frank Bonadio | $75,000.00 |
| Clayton Shelver | $30,000.00 |
| Todd Robinson | $54,000.00 |

Each officer shall be entitled to an annual cost of living increase of four percent (4%) until such time as Final Distributions in Cash, if any are required under the Plan, have been made to the holders of Class 9 Claims.

19.3 No dividends shall be paid to any of the shareholders of the Reorganized Debtor until such time as all distributions in Cash required under the Plan, if any, to the holders of Class 9 Claims have been made.

## ARTICLE XX

## GENERAL PROVISIONS

20.1 <u>Extension of Payment Dates</u>: If any payment under the Plan falls due on a Saturday, Sunday or other day which is not a Business Day, then such due date shall be extended to the next following Business Day.

20.2 <u>Notices</u>: Any notice hereunder to the Reorganized Debtor shall be in writing and, if by telegram, telex, or facsimile, shall be deemed to have been given when sent, and if mailed, shall be deemed to have been given three (3) days after the date when sent by registered or certified mail, postage prepaid, and addressed as follows:

<u>If to the Debtor or Reorganized Debtor:</u>
FasTech Services, Inc.
Attn: President
1119 North Kickapoo Street
Lincoln, Illinois 62656

<u>With a copy to:</u>
Charles S. Stahl, Jr.
SWANSON, MARTIN & BELL, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532

20.3 <u>Transfer of Claims</u>: In the event that the holder of any Claim shall transfer such Claim, it shall immediately advise the Reorganized Debtor in writing of such transfer by giving written notice in accordance with paragraph 20.2, above. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor.

20.4 <u>Captions</u>: Paragraph captions used in the Plan are for convenience only and shall not affect construction of the Plan.

20.5 <u>Severability</u>: Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

20.6 <u>Successors and Assigns</u>: The rights and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors or assigns of such person or entity.

20.7 <u>No Affect on Final Orders</u>: Nothing contained in the Plan shall adversely affect the rights of any Creditor or party in interest under any Final Order previously entered by the Bankruptcy Court, including, without limitation, a Final Order entered by the Bankruptcy Court granting a Creditor or party in interest relief from the automatic stay provisions contained in §362 of the Bankruptcy Code.

## ARTICLE XXI

## RETENTION OF JURISDICTION

21.1 Notwithstanding confirmation of the Plan, the Bankruptcy Court shall retain jurisdiction for the following purposes:

    a.   Determination of the allowability of Claims, upon objection to such

Claims by any party in interest;

    b. Determination of requests for payment by Professional Persons and Claims entitled to priority under §§503 and 507 of the Bankruptcy Code, including compensation of parties entitled thereto;

    c. Resolution of controversies and disputes regarding interpretation of the Plan, and the entry of orders in aid of implementation of the Plan;

    d. Modification of the Plan pursuant to §1127 of the Bankruptcy Code;

    e. Adjudication of any causes of action brought by the Debtor or the Reorganized Debtor, including, but not necessarily limited to, causes of action relating to Avoidance Recoveries; and

    f. Entry of a final decree closing the Debtor's case.

## ARTICLE XXII

## EFFECT OF CONFIRMATION

    22.1 Except as otherwise provided in the Plan or the Confirmation Order, the confirmation of the Plan shall bind the Debtor, the Reorganized Debtor and all holders of Claims against and interests in the Debtor and its estate, whether or not the foregoing persons and entities are impaired under the Plan and whether or not any of the foregoing persons or entities have voted on or accepted the Plan.

    22.2 Except as otherwise provided in the Plan or the Confirmation Order, all of the property of the Debtor's estate, including any and all causes of action as might be available to the Debtor, shall be vested in the Reorganized Debtor on the Confirmation Date, subject to any obligations secured thereby and to the provisions of the Plan.

    22.3 Except as provided for in §§1141(d) of the Bankruptcy Code, and except as otherwise provided in the Plan or in the Confirmation Order, on the Confirmation Date the property of the Debtor's estate shall be free and clear of all liens, Interests, and Claims.

## ARTICLE XXIII

## OTHER MATERIALS

23.1 The attention of holders of Claims and Interests is directed to the Disclosure Statement dated as of January 31, 2011.

Dated: January 31, 2011

                                            Respectfully submitted,

                                            FASTECH SERVICES, INC.

                                            By: /s/ Frank Bonadio
                                                    Its Chief Executive Officer and President

                                            By: /s/ Charles S. Stahl, Jr.
                                                    One of its attorneys

Charles S. Stahl, Jr.
Ross W. Bartolotta
SWANSON, MARTIN & BELL, LLP
2525 Cabot Drive, Suite 204
Lisle, Illinois 60532
(630) 799-6990
Fax: (630) 799-6901