UNTED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| FASTECH SERVICES, INC., | ) | Case No. 10-81323 |
| a Nevada corporation (FEIN 27-0973823), | ) | |
| | ) | Judge Perkins |
| Debtor. | ) | |

## ASSOCIATED BANK N.A.'s MOTION TO CONVERT DEBTOR'S CHAPTER 11 PROCEEDING TO A CHAPTER 7 PROCEEDING

NOW COMES Associated Bank, N.A. ("Associated Bank"), a secured creditor, by and through undersigned counsel, pursuant to 11 U.S.C. § 1112(b), and for its Motion To Convert Debtor's Chapter 11 Proceeding To A Chapter 7 Proceeding, respectfully states and alleges as follows:

### BACKGROUND

1. On April 22, 2010 ("Petition Date") Fastech Services, Inc., a Nevada corporation ("Debtor") filed a voluntary petition for relief pursuant to Chapter 11, Title 11 United States Code.

2. Prior to the Petition Date, Debtor, through its predecessor entities RJ Power Plumbing & Heating Company ("RJP") and Associated Mechanical, Inc. ("AMI"), executed and delivered to Associated Bank certain promissory notes, commercial security agreements, mortgages and other collateral documents (collectively "Loan Documents"). *See* Loan Documents, true and accurate copies of which are attached hereto as Exhibits 1-21. The Loan Documents evidence debts owed to Associated Bank by RJP and AMI, secured by *inter alia* all assets of RJP and AMI ("Associated Bank Loans"). As of the Petition Date, the principal balance due on the Associated Bank Loans was approximately $2,888,178 as to RJP and $1,972,917 as to AMI.

3.  RJP and AMI stopped paying on the Associated Bank Loans in February 2009. As a result, Associated Bank filed suit against RJP and AMI in Circuit Court of Tazewell County ("State Court") and obtained a judgment against each entity on November 4, 2009 ("State Court Judgment").

4.  Subsequent to the entry of the State Court Judgment, Associated Bank commenced post-judgment actions to collect the balance due under the Loan Documents. Associated Bank served each Debtor with citations to discover assets pursuant to 735 ILCS 5/2-1402. *See* Citations to Discover Assets, true and accurate copies of which are attached hereto as Exhibits 22-25.

5.  In response to this collection and enforcement activity, Debtor began a sustained campaign of intentional, overt and malicious interference with Associated Bank's rights as a secured creditor.

6.  Debtor, through its principal Frank Bonadio, delivered correspondence to certain of its customers *instructing* each customer to ignore demands by Associated Bank to pay over account receivables to Associated Bank. *See* Correspondence, true and accurate copies of which are attached hereto as Exhibit 26. While Associated Bank has only a limited number of these responses in its possession, it must assume that the Debtor made and delivered similar letters to all of its account debtors directing each to ignore Associated Bank's right to payment.

7.  As a result of the Debtor's conduct, Associated Bank was unable to collect any meaningful portion of the judgment amount entered in state court proceedings before the Petition Date.

## DEBTOR'S CHAPTER 11 PROCEEDING

8. On April 22, 2010, the Debtor filed its voluntary petition for relief pursuant to Chapter 11, Title 11 United States Code ("Petition").

9. Subsequent to the filing of the Petition, this Court entered several Orders which protected Associated Bank's secured interest in the Debtor's collateral as defined by the Loan Documents.

10. On July 10, 2010, this Court entered a Final Order on Motion of the Debtor In Possession For Authority To Use Cash Collateral And Interim Grant Of Adequate Protection ("July Order"). The July Order required the Debtor to furnish, each Friday after entry of the Order, a written report setting forth its use of cash collateral, cash on hand, account receivables, and inventory for itself and all of its individual business segments. *See* Order, entered by this Court on July 7, 2010.

11. The July Order also required the Debtor to "furnish in the future to Associated Bank and South Side Bank its monthly financial report for income generated." *See* July Order.

12. On September 8, 2010, this Court entered an Agreed Order Authorizing Adequate Protection Payments To Associated Bank, N.A. ("September Order"). The September Order required the Debtor to pay Associated Bank the sum of not less than $5,000.00 per month, and up to $10,000.00 per month if cash flow permits, as adequate protection during the administration of the Chapter 11 plan. *See* Order, entered by this Court on September 8, 2010.

13. The September Order expressly provides that the Adequate Protection Payments "are intended to protect Associated Bank, N.A., against the decline in value of its collateral consisting of tangible assets, including machinery and equipment, as to which Associated Bank, N.A. held a valid and perfected security interest on the [Petition Date]." *See Id.*, at ¶3.

## DEBTOR'S CHAPTER 11 PROCEEDING SHOULD BE CONVERTED TO CHAPTER 7 PROCEEDING PURSUANT TO 11 U.S.C. § 1112(b)

14. Under 11 U.S.C. § 1112(b), upon the request of a party in interest, the Court shall convert a Chapter 11 proceeding to a Chapter 7 proceeding for good cause and if it is in the best interest of creditors and the estate.

15. Good cause exists in the instant matter to convert the Debtor's Chapter 11 proceeding to a Chapter 7 proceeding.

16. Under 11 U.S.C. § 1112(b)(4)(E) cause for conversion exists if the Debtor has failed to comply with an Order of the Court.

17. The Debtor has failed to comply with the July Order by not providing Associated Bank each week since entry of the Order with a written report setting forth its use of cash collateral, cash on hand, account receivables, and inventory for itself and all of its individual business segments.

18. The Debtor also has filed to comply with the July Order by not providing to Associated Bank a monthly financial report for income generated (the most recent operating report was filed by the Debtor on February 9, 2011, and was for the month of <u>November 2010</u>).

19. The Debtor also has failed to comply with the September Order by failing to make adequate protection payments to Associated Bank. The Debtor attempted to make two (2) adequate protection payments since entry of the Order. However, both of the Debtor's checks were returned by the bank as having insufficient funds. As a result, Associated Bank still has not received a single adequate protection payment from the Debtor.

20. Under 11 U.S.C. § 1112(b)(4)(A) cause for conversion exists if there is a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation.

21. On or about January 29, 2011, on information and belief, the Debtor, without providing notice to Associated Bank or obtaining approval from this Court, held an auction at which time and place it sold a substantial amount, if not all, of its inventory and equipment used by AMI. A copy of what appears to be a notice of auction which was published locally is attached hereto as Exhibit 27. The inventory and equipment sold by the Debtor were part of the Estate and were property in which Associated Bank held a secured interest. As a result, there has been a substantial loss to the Estate with no reasonable likelihood of rehabilitation.

22. Further, because Associated Bank has not received any adequate protection payments, it still is not protected for the diminution in value of the inventory and equipment which remains in the Estate, if any.

23. Under 11 U.S.C. § 1112(b)(4)(B) cause for conversion exists if there has been gross mismanagement of the estate.

24. There can be no doubt that there has been gross mismanagement of the Debtor's Estate. Notwithstanding that the Debtor has collected receivables during this proceeding, it still has not made a single adequate protection payment to Associated Bank as required by this Court. In addition, because the Debtor failed to provide notice to Associated Bank or obtain authorization from this Court to proceed with the auction, Associated Bank never had an opportunity to object to the sale, and this Court never was given the opportunity to set any guidelines or reporting requirements to govern the sale. The failure of the Debtor to provide notice of the auction to secured creditors and obtain permission of the Court to proceed with the sale indicates that the Debtor's Estate is being mismanaged.

25. Consequently, cause exists to convert the Debtor's Chapter 11 proceeding to a Chapter 7 proceeding, and Associated Bank's Motion should be granted.

## DEBTOR'S CHATPER 11 PROCEEDING SHOULD BE CONVERTED TO A CHAPTER 7 PROCEEDING DUE TO THE LACK OF A GOOD FAITH FILING

26. It is well established that the enumerated causes identified in 11 U.S.C. § 1112(b)(4) for converting a proceeding to Chapter 7 are not exhaustive. *See In re Strug-Division, LLC*, 375 B.R. 445, 448 (N.D. Ill. 2007); *see also In re McCormick Road Associates*, 127 B.R. 410 (N.D. Ill. 1991). A Court may also convert a Chapter 11 proceeding to a Chapter 7 proceeding if the Debtor fails to meet a good faith standard. *See Id.* It is the burden of the Debtor to establish that the petition was filed in good faith. *See Id.* at 448.

27. The key test in determining good faith under Chapter 11 "is whether a debtor has proposed or can propose a legally and economically feasible plan for reorganization. The test is whether a debtor is attempting to unreasonably deter and harass creditors or attempting to effect a speedy, efficient reorganization on a feasible basis." *See Id.* at 449. "The absence of assets, lack of employees and negative cash flow may show that a plan is not economically or legally feasible." *See Id.*

28. In other words, "the question is whether the case and possible plan serves a valid reorganizational purpose. If not, then the case was filed only to harass and delay creditors, and therefore was not filed in good faith." *See Id.*

29. In ascertaining good faith, "pre-bankruptcy wrongdoing by the principals of a debtor may show them to be unreliable or incompetent as managers, thereby causing doubt on any plan they propose." *See Id.*

30. It is clear that the Debtor's Chapter 11 proceeding was not filed in good faith, and now should be converted to a Chapter 7 proceeding.

31. First, due to the absence of any substantial assets, the Debtor cannot propose a legally and economically feasible plan for reorganization. As indicated in the Debtor's schedules, the total value of collateral securing its indebtedness to Associated Bank is far less

than the principal amount of the indebtedness due and owing Associated Bank. Moreover, due to the recent sale of the Debtor's assets, it is uncertain what, if any, assets remain in the estate which could provide the basis for an effective reorganization. In fact, the recent auction of the Debtor's assets indicates that the Debtor has no intention of reorganizing at all. The Debtor cannot reorganize assets it no longer owns. Rather, it now is clear that the Debtor's intention was to deter Associated Bank's collection attempts while it collected receivables and prolonged its Chapter 11 proceeding as long as possible.

32.  Moreover, the unauthorized sale of the Debtor's assets was outside of the ordinary course of business, and suggests a desire to liquidate the Debtor's companies to fund the Chapter 11 Plan. Any liquidation of the Debtor's assets can, and should, be performed by a Chapter 7 Trustee or the secured creditors rather than the Debtor. Liquidation by a Chapter 7 Trustee or a secured creditor would ensure that proper sales procedures were followed, and would prevent the continued and unnecessary administrative expenses of a Chapter 11 proceeding.

33.  Second, the Debtor's negative cash flow is further indicia that effective reorganization is not possible, and that the Debtor's Chapter 11 proceeding was not filed in good faith. As indicated in the Debtor's "Schedule of Income and Expenses (Corporate Debtor)", both RJP and AMI each lost money from January 1, 2010 to the Petition Date. *See* Schedule of Income and Expenses (Corporate Debtor), filed with this Court on May 16, 2010, at Exhibits C and E. RJP reported a gross operating loss of ($314,131.48), and AMI reported a gross operating loss of ($6,595.24). In addition, the most recent monthly operating report filed by the Debtor for November 2010 indicates the Debtor had a net profit loss of ($12,429.61) for the year. *See* Monthly Operating Report for November, filed with this Court on February 9, 2011.

34.  Therefore, it does not appear that the income generated by the Debtor is sufficient to service the balance of the loans to Associated Bank. The negative cash flow of RJP and AMI,

coupled with the valuation of the Debtor's assets (which continue to depreciate in value) at a substantially lesser amount that what it owes to Associated Bank, indicates that the Debtor is unable to set forth any legally and economically feasible reorganization plan. The fact that a reorganization plan is not feasible is evident by the Debtor's failure to make even a single adequate protection payment to Associated Bank, notwithstanding that it has continued to collect its receivables during this proceeding.

35. Third, the Debtor's Plan of Reorganization, filed on February 3, 2011, does not serve a valid reorganizational purpose ("Proposed Plan"). The Proposed Plan indicates that Associated Bank will retain its lien and security interests in and to certain personal property of the Debtor. *See* Proposed Plan, at ¶7.1. However, due to the recent sale of assets, it is entirely uncertain what personal property, if any, remains in the Estate which secures the indebtedness owed to Associated Bank.

36. The Proposed Plan also indicates that Associated Bank is to be paid a certain percentage of receivables that are recovered. *See* Proposed Plan, at ¶7.2. However, the Debtor's failure to provide any Adequate Protection Payments to Associated Bank thus far in the proceedings casts serious doubt on whether any payments will be made to Associated Bank pursuant to the Proposed Plan.

37. Further, the Proposed Plan provides that any claims of Associated Bank that are not paid in full shall be treated as unsecured claims. *See* Proposed Plan, at ¶7.7. As stated above, without a detailed report of the assets sold at auction, the extent of Associated Bank's claims which may be unsecured remains entirely uncertain.

38. Finally, the Debtor's pre-bankruptcy actions establish that they are unreliable and incompetent as managers, and that an effective reorganization is impossible. As indicated above, after Associated Bank obtained its State Court Judgment, the Debtor commenced a series of

highly questionable tactics to prevent Associated Bank from collecting on its judgment. Included in these questionable tactics were the actions of the Debtor's principal, Frank Bonadio, who sent correspondence to customers of RJP and AMI and instructed them to ignore any demands to pay over receivables to Associated Bank. *See* Exhibit 26. The Debtor's pre-bankruptcy actions further suggest that this proceeding was not filed in good faith, and was merely an attempt to unreasonably deter and harass creditors.

39. Consequently, it is clear that an effective reorganization is not possible and that the Debtor's Chapter 11 proceeding was not filed in good faith. As a result, Associated Bank's Motion should be granted.

## CONCLUSION

**WHEREFORE**, the Creditor, Associated Bank, N.A. respectfully prays that this Court enter an order finding that good cause exists to convert the Debtor's Chapter 11 proceeding to a Chapter 7 proceeding, that the Debtor's Chapter 11 proceeding was not filed in good faith, that the Debtor's proceeding is hereby converted to a Chapter 7 proceeding, and for such other and further relief as this Court deems equitable and just.

ASSOCIATED BANK, N.A., Plaintiff,

By: */s/ Joseph B. VanFleet*
One of its Attorneys

Joseph B. VanFleet
VanFleet Law Offices
Associated Bank Building
411 Hamilton Blvd., Suite 2002
Peoria, Illinois 61602
Telephone (309) 672-2200
Facsimile (309) 672-2201
ARDC No.: 6204706
jvanfleet@vanfleetlaw.com

UNTED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| FASTECH SERVICES, INC., | ) | Case No. 10-81323 |
| a Nevada corporation (FEIN 27-0973823), | ) | Judge Perkins |
| Debtor. | ) | |

## CERTIFICATION OF SERVICE

I, the undersigned attorney, certify that a copy of the attached **Associated Bank's Motion to Convert Debtor's Chapter 11 Proceeding to a Chapter 7 Proceeding** was served to the following addresses by Electronic Notice through ECF or by depositing the same in the United States Mail in Peoria, Illinois, addressed to the said person(s) to whom said Instrument is directed on this 15th day of February, 2011, with proper postage prepaid:

### Via Electronic Notice through ECF

- Ross Bartolotta    rbartolo@smbtrials.com
- Sumner Bourne    sbnotice@mtco.com, SABArchive@gmail.com
- Gerard A Brost    gerard.brost@usdoj.gov, margo.l.scamp@usdoj.gov
- Charles E Covey    chuckleberry71@hotmail.com
- Michael Dudek    mdudek@leoweber.com
- John Howard    jhoward@hhmlaw.net
- T. Scott Leo    sleo@leoweber.com, jwatt@leoweber.com;bgonzalez@leoweber.com;mdudek@leoweber.com
- Donald A LoBue    lobueda@sbcglobal.net, lobueda@sbcglobal.net
- Sherry K. Dreisewerd    sdreisewerd@polsinelli.com
- Kakthryn A. Klein    rb_bank@riezmanberger.com
- Rhona Lyons    rsl@schuchatcw.com, notices@schuchatcw.com;ss@schuchatcw.com;sp@schuchatcw.com
- Thomas C Pavlik    tpavlik@delanolaw.com, delano@delanolaw.com
- Sabrina M Petesch    sabrina.m.petesch@usdoj.gov
- R Phillip Reed    reedlaw@sbcglobal.net
- Charles S. Stahl    cstahl@smbtrials.com
- U.S. Trustee    USTPRegion10.PE.ECF@usdoj.gov
- John A Wolters    johnwolters@cavanagh-ohara.com, patty@cavanagh-ohara.com
- Thomas M. Shade    tmslaw@aol.com
- Brian Mooty    brianmooty@ksswf.com
- Gregory Mescher    gmescher@mescherlaw.com
- Fred Prillaman    prillaman@mohanlaw.com
- J. Randall Cox    rcox@feldman-wasser.com

### Via U.S. Mail

John W Howard
456 Fulton St #398
Peoria, IL 61602

Darilynn J Knauss
211 Fulton St #400
Peoria, IL 61602

National Stabilization Agreement of the Sheet Metal Industry Trust Fund and Sheet Metal Workers' National Pension Fund
c/o Dawn M. Costa, Esq.
Jennings Sigmond PC
510 Walnut St., 16th Fl.
Philadelphia, PA 19106

Recovery Management Systems Corporation
25 SE 2nd Ave Ste 1120
Miami, FL 33131-1605

Fred C Prillaman
1 N Old Capitol Plz #325
Springfield, IL 62701

By: _/s/ Joseph B. VanFleet_

Joseph B. VanFleet
VanFleet Law Offices
Associated Bank Building
411 Hamilton Blvd., Suite 2002
Peoria, Illinois 61602
Telephone (309) 672-2200
Facsimile (309) 672-2201
ARDC No.: 6204706
jvanfleet@vanfleetlaw.com